# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MICHAEL POHL, | : | Case No. 3:18-cv-00019 |
| | : | |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.     Introduction

Plaintiff Michael Pohl has many health problems that interfere with his ability to

work.  He asserts in the present case—as he did in the Social Security Administration—that

his health problems prevent him from working and thus constitute a "disability" under the

Social Security Act.  The Social Security Administration disagreed and found that he is not

under a disability and not eligible to receive Disability Insurance Benefits.  Those

conclusions came mainly in Administrative Law Judge Mark Hockensmith's decision.

(Doc. #6, *PageID* #s 58-72).

Plaintiff presently challenges several aspects of ALJ Hockensmith's decision,

including, in part, his evaluation of the medical evidence of record, his conclusions that

Plaintiff can perform light work with frequent handling and fingering bilaterally, and his

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

interpretations of raw medical data in functional terms. He seeks a remand of this case for

payment of benefits or, at a minimum, for further administrative proceedings. The

Commissioner finds no merit in Plaintiff's contentions and seeks an Order affirming the

ALJ's decision.

## II.    Applicable Standards

Present review of ALJ Hockensmith's decision proceeds along two lines: whether he

applied the correct legal standards and whether substantial evidence supports his findings.

*Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of*

*Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not

driven by whether the Court agrees or disagrees with the ALJ's factual findings or by

whether the administrative record contains evidence contrary to those findings. *Gentry v.*

*Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486

F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the

substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the

relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting

*Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence

consists of "more than a scintilla of evidence but less than a preponderance…." *Rogers*, 486

F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

If the ALJ applied incorrect legal criteria, reversal may be warranted even though the

record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v.*

*Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.

### III. Plaintiff and his Testimony

Plaintiff was age forty-five on the date (July 1, 2014) his asserted disability began. He has a "limited" education, which the Social Security Administration generally considers to be "a 7th through the 11th grade level of formal education …." 20 C.F.R. § 404.1564(b)(3). He worked over the years as a dispatcher, an office manager, a service manager, and HVAC (heating, ventilation, and air conditioning) service technician.

Plaintiff testified during a hearing held by ALJ Hockensmith that he was 5′ 8.5″ to 5′9″ tall and weighed approximately 450 pounds. He lived in a 2-story house with his mother and 2 sisters. He normally climbs the stairs once a day.

Plaintiff reported to ALJ Hockensmith that he had suffered a stroke 8 to 10 years before the hearing. Medical records show that this occurred in September 2010 (Doc. #6, *PageID* #357). About 3 months later, he returned but struggled and only worked half-time. This continued until Plaintiff started an in-home consulting business in 2014. His clients would email him their plans and other materials, and he could consult with them by mail or phone. Things went well until July 2014 when he had his "first real attack with the pain in [his] back." (Doc. #6, *PageID* #88). It put him in bed for a month. He needed help to get to the bathroom, he couldn't do housework, and his kids cleaned his house. *Id.* He lost about 10 percent of his clientele while he was laid up.

Things deteriorated further after he began to work again. He testified, "I would work … for like 15-20 minutes. Sometimes I would get an hour and I'd end up having to [lie] down because I would have a migraine, any number of things like that. And it's just progressed since then." *Id.* Plaintiff estimated that in 2015, he worked probably 30 or

3

sometimes 40 hours a week. But his ability to work progressively lessened from 40 to 30, then 30 to 20 hours a week due to back pain. He noted, "There are times when my back hurts so bad that I literally have to [lie] down." *Id*. at 89. At the time of the ALJ's hearing (in December 2016) he worked about 20 minutes a week.

Plaintiff can barely do the grocery shopping even in a cart. *Id*. He can occasionally vacuum depending on how he feels. He might be able to load the dishwasher but only once a day. *Id*. at 91.

The most comfortable position for Plaintiff was sitting—he could do that for at least 20-30 minutes at a time. *Id*. at 91. He could stand for about 10 minutes, then his legs started shaking. He had "trouble breathing and stuff like that…." *Id*. at 92. He slept lying down but his pain interfered with his sleep. He only slept for 1.5 hours to two hours and then his pain required him to get up for an hour. He further explained, "The pain is from basically from the bottom of my skull down to the top of my knees." *Id*.

What might be Plaintiff's biggest difficulty is that he cannot carry anything anymore. He told the ALJ, "If I carry a Kleenex box upstairs from the [first (probably)] floor I'm hurting so bad by the time I get to the top of the stairs, it's unreal." *Id*. at 89. His ability to reach is restricted. If he attempts to put away groceries, he starts to lose feeling in his arms, causing him to drop items like small soup cans. He does not try to put away any large items. And he has issues with "no feeling in [his] hands." *Id*. at 92. Plaintiff also noted during his hearing that his hands had become red in appearance and started burning: "It's on fire right now. It's tingling, but it's tingling as such a point, it's on fire. It's burning," he said. *Id*. Sitting for 30 to 45 minutes causes these issues in his hands. *Id*. at 93.

His ability to stand is also limited. The outside of his legs goes numb from his hip to his knees. Before his hearing, he struggled to walk from a garage, where he had parked his car, to the building in which his hearing occurred. He testified, "I had to stop in the alley way lean against the wall and then when I got here, I had to stop and sit on the wall [sic], on the edge here in the alley way. It's all about losing feeling in my hands and the pain in my back." *Id*. at 93.

He has difficulty driving long distances because the pain in his back gets too serious, requiring him to stop and walk around. He can drive for about 30 minutes before needing to stop and walk around. He drives maybe twice a week, most often to the grocery store 5 miles from his home.

Plaintiff spends his days in his bedroom sitting in an office chair or using an electric-lift chair to move to his bed. *Id*. at 96. He can slip on his shoes but has difficulty putting on pants and socks. It takes him 1 to 3 hours to shave, and he must shave in stages of 45 minutes before he needs to sit down for 1 hour to 1 hour and 45 minutes. *Id*. at 97. He must shave in this manner mostly due to his back pain but also due to the combination of pain and fatigue. He cannot bend and stoop to pick a quarter off the floor. He must kneel to get it. *Id*.

## IV.   ALJ Hockensmith's Decision

In reviewing the evidence connected to Plaintiff's application for benefits, ALJ Hockensmith utilized the applicable 5-step analysis. *See* 20 C.F.R. § 404.1520; *see e.g., Earley v. Comm'r of Soc. Sec*., 893 F.3d 929, 931 (6th Cir. 2018); *Glenn v. Comm'r of Soc. Sec*., 763 F.3d 494, 497 n.1 (6th Cir. 2014). Among the ALJ's more significant findings, he

described, at step 2, Plaintiff's many severe impairments as "cervical and lumbar degenerative disc disease, obesity, hypertension, migraines, bilateral carpal tunnel syndrome, peripheral neuropathy, depression, and cognitive disorder." (Doc. #6, *PageID* #60). At step 3, the ALJ found that Plaintiff was not automatically entitled to benefits under the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. #6, *PageID* at 61).

At Step 4, the ALJ concluded that Plaintiff could perform light work with many limitations:

> (1) no climbing of ladders, ropes or scaffolds; (2) occasional climbing of ramps or stairs; (3) occasional balancing and stooping; (4) no kneeling, crouching or crawling; (5) frequent overhead reaching bilaterally; (6) frequent handling and fingering bilaterally; (7) no work at unprotected heights or with dangerous machinery; (8) limited to simple, routine tasks; (9) in a static work environment with few changes in routine; (10) no fast paced work or strict work production quotas; and (11) occasional contact with the public, coworkers, and supervisors.

*Id.* at 63. Given these limited abilities, Plaintiff could no longer engage in his past relevant work, according to the ALJ. *Id.* at 70.

Continuing to step 5, ALJ Hockensmith determined that Plaintiff could perform a significant number of unskilled light jobs available in the national economy—namely, laundry worker, inspector, hand packager, and mail clerk. His ability to do such available jobs meant he was not under a disability and not eligible to receive Disability Insurance Benefits. *Id.* at 70-71.

## V.    Discussion

Plaintiff contends that the ALJ reversibly erred at Step 4 because his assessment of Plaintiff's residual functional capacity is unreasonable in light of his obesity; his objectively

documented back impairment; and his objectively documented paresthesia, carpal tunnel syndrome, and peripheral neuropathy in his hands.  Plaintiff also maintains that the ALJ erred by interpreting raw medical data into functional terms.  He points out that neither of the record-reviewing state-agency physicians nor Dr. Vitols interpreted the July 2016 MRI of Plaintiff's cervical spine, which—Plaintiff says—revealed significant findings.  Plaintiff argues that because the ALJ relied on incomplete medical-expert opinion, he crossed the line between judge and medical doctor.

The Commissioner asserts that the ALJ engaged in a lengthy and thoughtful discussion of the effects of Plaintiff's obesity on his other impairments and recognized that his obesity aggravated his other conditions.  The Commissioner further contends that the ALJ pointed to three medical opinions that considered Plaintiff's height and weight or otherwise mention his obesity and found him capable of light work.  Because of this, the ALJ's decision followed *Coldiron v. Comm'r of Soc. Sec.*, 391 F.App'x 435, 443 (6th Cir. 2010), according to the Commissioner.

Contrary to the Commissioner's contention, the ALJ's decision does not contain a lengthy and thoughtful discussion of Plaintiff's obesity and its impact on his impairments.  The ALJ's initial findings concerning Plaintiff's obesity arose at Step 2 where the ALJ found that Plaintiff's severe impairments included obesity.  The ALJ noted that Plaintiff's hearing testimony indicated he stood 69 inches tall and weighed 450 pounds, equaling a body mass index of "66.4 at minimum."   (Doc. #6, *PageID* #60).  The ALJ further found at Step 2 that Plaintiff "is considered obese and that condition could be expected to aggravate his other conditions."  *Id*.  The ALJ did not otherwise mention Plaintiff's obesity at Step 2

or discuss which of Plaintiff's other conditions aggravated by his obesity.  Although this omission was not an error, the point here is that the ALJ's Step 2 findings do not contain a lengthy and thorough discussion of Plaintiff's obesity and its effects on him.

The ALJ similarly provided no indication at Step 3 that he considered whether Plaintiff's obesity combined with his other impairments met or equaled the requirements of any Listing-level impairment.  Although the ALJ generally found at Step 3 that Plaintiff's impairments alone or in combination did not meet or medically equal a Listing-level impairment, he omitted specific mention of obesity in his Step 3 discussion.   Consequently, and contrary to the Commissioner's position, the ALJ's decision at Step 3 does not provide a lengthy and thorough discussion regarding Plaintiff's obesity and its impact on his other impairments.  This also runs afoul of a mandate set forth in the regulations:

> The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators *must consider* any additional and cumulative effects of obesity.

20 C.F.R. Part 404, Subpart P, App'x 1, § 1.00(Q) (emphasis added); *see* Soc. Sec. R. 02-1p, 2002 WL 34686281, at *3 (Sept. 12, 2002); *see Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 959 (6th Cir. 2015) (obesity "must be considered throughout the ALJ's determinations, 'including when assessing an individual's residual functional capacity,' precisely because "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.").  The Commissioner correctly recognizes that an ALJ's decision satisfies this requirement when he or she credits the opinions of

physicians " 'who explicitly accounted for [a claimant's] obesity.' " *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 835 (6th Cir. 2016) (quoting *Coldiron*, 956 F. App'x at 959).

Did the ALJ sufficiently consider Plaintiff's obesity at Step 4?

The ALJ acknowledged at Step 4 that Plaintiff "alleged … he was unable to work because of stroke, high blood pressure, depression, arthritis in lower back, morbid obesity, hand numbness, hip pain, and poor memory." (Doc. #6, *PageID* #64). The ALJ also noted that Plaintiff had participated in diet-management counseling but had attempted to lose weight without success. The ALJ also knew that Plaintiff's weight had fluctuated throughout his treatment and that he weighed 450 pounds (per his testimony) at the time of the ALJ's hearing. *Id*. at 67. The ALJ generally observed that Dr. Vitols and nurse practitioner Ms. Zuhl had diagnosed Plaintiff with morbid obesity, among other conditions. *Id*. at 65-66.

The ALJ erred at Step 4 by providing no meaningful discussion of the impact Plaintiff's obesity had on his other impairments. Although the ALJ certainly understood that Plaintiff had been diagnosed as morbidly obese and have the severe impairment of morbid obesity, his decision at Step 4 does not sufficiently identify morbid obesity as an impairment he considered when determining the combined impact his impairments have on his functional limitations. This omission is contrary to the regulations. *See* 20 C.F.R. Part 404, Subpart P, App'x 1, § 1.00(Q) ("adjudicators *must consider* any additional and cumulative effects of obesity." (emphasis added); *see also* Soc. Sec. R. 02-1p, 2002 WL 34686281, at *7 ("As with any other impairment, we *will* explain how we reached our

conclusions on whether obesity caused any physical or mental limitations." (emphasis added)).

The Commissioner's reliance on *Coldiron* is misplaced. In *Coldiron*, the ALJ went much further in considering the claimant's morbid obesity by finding "that Coldiron 'appeared to be limited primarily by obesity and deconditioning' …." 391 F. App'x at 443 (quoting, in part, the ALJ's decision). *Coldiron* also explained, "acknowledged that obesity contributed to Coldiron's other medical conditions. [The ALJ] noted, for instance, that Coldiron's weight exacerbated his mild restrictive lung disease, dyspnea, obstructive sleep apnea, and the musculoskeletal symptoms related to Coldiron's knees and back." *Id*. In the present case, unlike in *Coldiron*, the ALJ did not determine whether Plaintiff's obesity constituted his primary limitation. Although the regulations do not specify this as a mandatory part of the obesity inquiry, it is a distinguishing feature between *Coldiron* and the present case. Additionally, in the present case, in contrast to *Coldiron*, the ALJ did not discuss or explain whether the claimant's obesity contributed to any of his other specific impairments. And Plaintiff has such impairments to consider in combination with his obesity—namely, his severe impairments of cervical and lumbar degenerative disc disease, hypertension, migraines, carpal tunnel syndrome, peripheral neuropathy, or depression.

Accordingly, the ALJ's errors regarding Plaintiff's obesity requires a remand of this matter to the Social Security Administration.[2]

---

[2] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's remaining contentions is unwarranted.

**VI.    Remand For Further Proceedings**

Remand is warranted when an ALJ's decision is unsupported by substantial evidence

or when the ALJ failed to follow the Administration's own regulations and that shortcoming

prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right.  *Bowen*,

478 F.3d at 746.  Remand for an ALJ's failure to follow the regulations might arise, for

example, when the ALJ failed to provide "good reasons" for rejecting a treating medical

source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such

as a treating source's opinions, *see Bowen*, 478 F3d at 747-50; failed to consider the

combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to

provide specific reasons supported by substantial evidence for finding the plaintiff's

credibility lacking, *Rogers*, 486 F.3d at 249.

Under sentence four of  42 U.S.C. §405(g), the Court has authority to affirm, modify,

or reverse the Commissioner's decision "with or without remanding the cause for

rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Consequently, a remand under

sentence four may result in the need for further proceedings or an immediate award of

benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir.

1994).  The latter is warranted "only where the evidence of disability is overwhelming or

where the evidence of disability is strong while contrary evidence is lacking." *Felisky*, 35

F.3d at 1041 (quoting *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th

Cir. 1994)).

A remand for an award of benefits is unwarranted in the present case because the

evidence of disability is not overwhelming and because the evidence of disability is not

strong while contrary evidence is weak.  *See Faucher*, 17 F.3d at 176.  Yet, Plaintiff is

entitled to an Order remanding this matter to the Social Security Administration pursuant to

sentence four of § 405(g) due to errors identified above.  On remand the ALJ should be

directed to review Plaintiff's disability claim to determine anew whether he was under a

benefits-qualifying disability pursuant to the applicable five-step sequential evaluation

procedure, including, at a minimum, (1) consideration and discussion of whether Plaintiff's

morbid obesity in combination with his other impairments meets or equals the

Commissioner's Listing criteria, *see* Soc. Sec. R. 02-1p, 2002 WL 34686281, at *5

("Obesity may be a factor in both 'meets' and 'equals' determinations.")[3]; and, (2) a re-

assessment of Plaintiff's residual functional capacity, including consideration and

meaningful explanation of the impact his morbid obesity has in combination with other

impairments on his functional limitations.  The Administration need not proceed to Step 4 of

the sequential evaluation in the event it is administratively determined that Plaintiff is

automatically eligible for benefits at Step 3.

### IT IS THEREFORE RECOMMENDED THAT:

1.      The Commissioner's non-disability finding be vacated;

2.      No finding be made as to whether Plaintiff Michael Pohl was under a
        "disability" within the meaning of the Social Security Act;

3.      This case be remanded to the Social Security Administration under sentence 4
        of 42 U.S.C. §405(g) for further consideration consistent with this Report and
        any Decision and Entry adopting this Report and Recommendations; and

---

[3] Ruling 01-02p identifies an additional significant possibility concerning whether obesity alone may constitute a disability at Step 3: "If an individual has the medically determinable impairment obesity that is 'severe'…, we may find that the obesity [alone] medically equals a listing."  2002 WL 34686281, at *4.

4.    The case be terminated on the docket of this Court.


April 3, 2019                                    *s/Sharon L. Ovington*
                                                 Sharon L. Ovington
                                                 United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).